### Bela Hubbard vs. John Taylor and Another.

Where A. was indebted to plaintiff in $15,000, for cash advanced; and plaintiff was liable, also, as endorser and accommodation acceptor for A. in $22,000, and for a firm composed of A. and another in $104,000; and A. being in failing circumstances, sold to plaintiff certain personal property in satisfaction of the $15,000, and, at the same time, conveyed to him certain real estate by deed for the consideration of $45,000, and took back a mortgage, conditioned for the payment of $45,000, by plaintiff, by the extinguishment of that amount of the liabilities for which plaintiff was so holden, and in case such liabilities should be taken up by A. or by said firm, then for the payment of that amount to A. within five years; and there was nothing in the evi-

dence to show that the sums mentioned as the consideration for such transfers were less than the value of the property, and no evidence of actual fraud in making them; — *Held,* That these transfers were not void, as tending to hinder, delay, or defraud the other creditors of A.

*Heard May 19th. Decided June 4th.*

Case made after judgment from Saginaw Circuit.

Replevin for certain personal property.

Plea of general issue, and notice that the goods, &c., were the property of John C. Baughman, and that defendant Grant, as sheriff of Saginaw county, had taken the same by virtue of writs of attachment issued from the Circuit Court for the county of Saginaw in favor of defendant Taylor and others against Baughman.

On the trial before the Honorable Josiah Turner, Circuit Judge, without a jury, plaintiff having shown the taking of the property by defendants from certain premises in Saginaw, offered in evidence, and proved the execution of, a bill of sale of the same, from John C. Baughman to plaintiff, bearing date November 20th, 1855, and also a warranty deed of the premises from which the same was taken, executed by Baughman to plaintiff, acknowledging the receipt of a consideration of forty-five thousand dollars, bearing the same date as the bill of sale, and recorded two days thereafter.

The defendants having proved the proceedings in attachment, and the indebtedness upon which they were founded, offered and read in evidence the following letter from plaintiff to one H. D. Jones: "Detroit, Dec. 8, 1855. Mr. H. D. Jones: Sir,—I have your letter of the 4th instant, and was much surprised at its contents. There is an unfortunate misunderstanding somewhere, which will probably account for the use of the language towards me that you would not have used if my position had been understood. The failure of Mr. Baughman involved me to a large amount, as I was on much of his paper, and solely for his accommodation — never having had any interest whatever in his operations. The mill, and all the personal property connected with it, either at Lower Saginaw or in the woods, was sold to me on the 20th No-

vember last, and I hold it to apply to his debts, some of which, being made my own by my endorsement, I am obliged to pay first, and the others as fast as means will permit. I can not understand what J. C. said to you or others that will involve me in trouble; neither he nor Mr. Harvey were authorized to say or do anything for me, except to get statements of all the claims, that I might know how everything stood; and Mr. Harvey was instructed to inquire what might be sold of the personal property. I have not seen Mr. Harvey since his return. I constituted Mr. Judson my agent, and requested him to send down all the accounts; which he will do, I presume, as fast as they can be made out. Until your letter came I knew nothing of any contract or promises made with you by J. C. B. or Mr. Harvey, but I will write by this mail to Mr. Judson, and authorize him to make such arrangement with you as justice to you and my own interest seem to require. He writes me you propose to examine the pine lands at $3.00 per day, and provisions found—the men with you to be paid by me. As Mr. J. C. Baughman informs me you are the best man for the purpose I can employ, I feel a confidence that you will perform such contract to the best of your ability and judgment. I do not doubt it will be for my interest to employ you. In the press and confusion consequent upon having so much thrown upon my hands, I have not yet been able to obtain full and accurate descriptions of the lands, and all the plats are yet with Mr. Judson. I shall need to have all these, in order to understand what there is to do. Meanwhile, I wish a statement of your account with Mr. Baughman, and an estimate of the expense of the survey, and estimate of the lands, as near as you can come at it. Mr. Judson is authorized to apply the oxen, at $90, on your account, and to make any temporary arrangement necessary, until I have time and opportunity to know just what is right and expedient. Please write me, in answer to the above, as soon as possible. Respectfully, B. Hubbard. P. S.—If Mr. Judson has left when this reaches

you, and you have men ready for the woods, you may commence examinations; and first on such parcels as have not been examined or reported on by any except Mr. Partridge."

The defendants then read in evidence the deposition of Joseph P. Whittemore; who testified as follows: I reside in Detroit, and did in the fall of 1855. I had a conversation with the plaintiff, Hubbard, in relation to the sale of certain property from Baughman to him (Hubbard). It was at Hubbard's office, in Detroit, in 1855. I do not recollect the month. It was within two or three weeks after Mr. Baughman failed. I spoke to Hubbard first about a demand in favor of Hart & Fay, of Saginaw — as to the prospect of their realizing anything on it. I asked him if there would be anything left of the property over and above enough to pay the plaintiff. I think his opinion expressed then was that there would not, or that it was doubtful. I asked him if all Baughman's property was assigned to him. He said it was not assigned, it was deeded to him—all the real estate. I think he said he had a bill of sale of the personal property. That he said the personal property was conveyed to him, I am certain, but not in what particular shape. I asked him why he took a deed instead of an assignment. He replied that an assignment would require an immediate sale for cash; that by taking a deed, the property could be sold on credit. I asked him, at the same time, if all the real and personal property was conveyed to him, and he said it was. I think that was all the conversation. When I asked him why he did not take an assignment, I think I asked him why he did not take a general assignment, and prefer himself as a creditor, instead of a deed; and then his answer was as above stated."

The defendants then offered, and read in evidence, the record of mortgage bearing date November 20th, 1855, and recorded in the office of the Register of Deeds of Saginaw county, on the 22d day of November, A. D. 1855, made and executed by Bela Hubbard to John C. Baughman, in

the usual form, for the consideration of forty-five thousand dollars upon the premises described in the deed from Baughman to Hubbard, with the following conditions:

"Provided always, and these presents are upon this express condition, viz., Whereas, said Hubbard, is an endorser and accommodation acceptor for the said Baughman, to the amount of twenty-two thousand dollars, and also an endorser and accommodation acceptor and surety for Baughman, Hubbard & King, and for Baughman & King, their survivors, to the amount of one hundred and four thousand dollars; and, whereas, said Baughman has this day conveyed to said Hubbard, sixty thousand dollars worth of property at Saginaw, and its vicinity, on which said Hubbard has paid fifteen thousand dollars in money previously loaned by him to said Baughman: Now, if the said Hubbard shall himself, within five years, take up and pay any of the liabilities upon which he is endorser, or accommodation acceptor, to the amount of forty-five thousand dollars (or in case said Baughman or any other person shall previously take up and pay said liabilities and acceptances), shall pay said sum of forty-five thousand dollars, in five years from date, with interest, according to the condition of a certain bond bearing even date herewith, executed by said Hubbard, the party of the first part, to the party of the second part, to which these presents are a collateral security, then these presents and the said bond shall cease," &c.

Defendants then proved that plaintiff was the brother-in-law of Baughman; and rested.

Plaintiff then called Baughman, who testified as follows: "I executed the bill of sale to plaintiff which has been offered in evidence, in consideration of the notes and bills that were endorsed and accepted by him for me. The agreement was that he was to pay that indebtedness, which was about $60,000. He was also liable for $100,000 for Baughman, Hubbard & King. Hubbard has paid over $100,000 of these endorsements and acceptances since the sale. The plaintiff

had no interest in my business, or in the business of Baugh-man, Hubbard & King."

On cross-examination, witness said: "The transfer was made at Detroit. I delivered the property which is in dis-pute, at Lower Saginaw, to Mr. Judson, the plaintiff's agent there, two or three days after the sale. Judson had been my agent; and when I sold and came up, I brought a let-ter from the plaintiff to Judson, by which he engaged Jud-son to act as his agent. The sale was a bona fide one, and absolute for the consideration stated. I think the considera-tion for the personal property was about $15,000. He had then paid more than that amount. Real estate was for the future indebtedness. The sale of the personal property was absolute."

Judson was then called, and testified to having received the letter testified to by Baughman, and that he immediately after posted notices in several places in Lower Saginaw of the transfer of the property, and had one inserted in the Saginaw "Spirit of the Times."

The value of the property being then agreed upon, the parties rested; and the Court, at the January Term, 1858, found the sale from Baughman to plaintiff void as to cred-itors, and rendered judgment for defendants for the value of the property. And plaintiff having excepted to this find-ing and ruling, brought the cause to this Court for review on case made.

*C. I. Walker*, for plaintiff:

There is nothing in the case showing, or tending to show, that the sale from Baughman to Hubbard was fraudulent in *law*. Nor is there in the evidence anything tending in the slightest degree to prove fraud in fact. There is no plausi-ble ground for the judgment of the Court below. Fraud must be *proved*. Here there is no *suspicion* of fraud, much less *proof.* — *Hollister vs. Loud*, 2 *Mich.* 309.

*J. G. Sutherland* and *W. M. Fenton*, for defendants:

The transfer of the real and personal estate constituted but one transaction, and if fraudulent in part as to creditors, the whole is void.—8 *Johns.* 253; 13 *Wend.* 53; 5 *Ibid.* 164; 7 *T. R.* 204.

The form of the transfer is unusual, and suggests an ulterior object to commit a fraud upon the creditors of Baughman, who was then insolvent. — *Burge on Suretyship*, 324; 9 *Paige*, 432; 1 *Ibid.* 329; 18 *Johns.* 505; 4 *Dana*, 27.

The circumstances show that the pretended sale was intended as a substitute for, and to subserve the purposes of, an assignment, with those implied conditions which would render such an instrument void.—12 *Barb.* 168; 2 *Comst.* 365; 1 *Sandf. Ch.* 135; 2 *Barb.* 9; 2 *Seld.* 510; 1 *Kern.* 302.

The transaction exhibits fraud in providing for payment of the proceeds of the property to Baughman in five years, instead of devoting them to the payment of his other creditors, in case Hubbard & King should pay the paper endorsed and accepted by plaintiff for *their* and Baughman's accommodation.—5 *Cow.* 547; 6 *Hill*, 438; 2 *Comst.* 365; 2 *Barb.* 9; *Burr. on Asst's*, 189; 7 *Cow.* 735; 5 *Johns.* 335; 4 *Barb.* 546, 559; 1 *Kern.* 302; 2 *Seld.* 510; 1 *Sandf. Ch.* 135; 12 *Barb.* 168.

MARTIN Ch. J.:

This is an action of replevin, brought to recover certain personal property claimed by the plaintiff, which was taken from his possession by virtue of two writs of attachment issued against the goods and chattels of one John C. Baughman. On the 20th day of November, 1855, the plaintiff, as the case shows, was the creditor of said Baughman in the sum of $15,000, for cash advanced; and was also liable on his paper, as endorser and accommodation acceptor, to the

5 MICH.—L.

amount of $22,000; and on that of the firm of Baughman, Hubbard & King, and of Baughman & King, their survivors, to the amount of $104,000. Aside from these relations, the plaintiff was unconnected with the business of either Baughman, or the firm of Baughman & King. At this time, Baughman, being in failing circumstances, sold to the plaintiff the personal property mentioned in this case, in consideration of this indebtedness of $15,000, and in satis. faction thereof; and he also conveyed to him, by deed, for the consideration of $45,000, certain real estate, and took back a mortgage, conditioned for the payment of said $45,000, by the extinguishment by the plaintiff, within five years, of that amount of the liabilities upon which he was holden as endorser or acceptor; or, in case of the liabilities being taken up by Baughman, or the firm of Baughman & King, for the payment of that sum, with interest, to Baughman, within five years. The plaintiff thereupon took possession of the property, and continued to hold and enjoy the same, until the attachment of the portion of the personal property for the recovery of which this action is brought.

To defeat the plaintiff's recovery, it is insisted by these defendants that the sale of this property was designed to hinder, delay, and defraud creditors, and is therefore fraudulent and void.

Had the transaction been confined to the turning out of the personal property in satisfaction of the indebtedness of $15,000, no question of its *bona fide* intent could have been raised; for it appears from the case, that the property was no more than adequate for the payment of that sum; and it is not denied by the defendant's counsel, nor can it be, that an insolvent debtor may prefer one creditor over another in the payment of his debts. The difficulty suggested by the defendants springs from the conveyance of the real estate; which, it is claimed, "was intended as a substitute for, and to subserve the purposes of, an assignment, with the implied conditions that would render such an instrument void";

and that, as it was executed at the same time with the sale of the personal property, it gives character to that sale; that both must be regarded as constituting but one transaction, and be held fraudulent and void as to creditors. We have no hesitancy in holding that the transaction was entire; that it was in furtherance of a single design, and the result of a single negotiation. Indeed, the recital in the mortgage of the conveyance of $60,000 worth of property — clearly referring to that of the personal property at $15,000, and the real at $45,000—sufficiently establishes this to have been the view taken by the parties themselves. If, therefore, the conveyance of the real estate shall be found to be fraudulent and void, it would follow that the sale of the personal property must be so regarded also. If it was the purpose of this sale that the property should thereby be placed beyond the reach of Baughman's creditors, and that Hubbard should hold it, not as the absolute owner, but as the trustee in fact of Baughman, and to enable him more leisurely and advantageously to settle his debts and compound with his creditors;—if, in short, its design was to hinder and delay them, it could not for a moment be upheld; and however harshly our judgment might operate upon the plaintiff, that judgment would only be consequent upon his own acts. While a party may well protect himself from the consequences of liabilities assumed for another, and receive payment of indebtedness to himself, yet he can only do this with such single purpose, and can not permit any considerations of sympathy or friendship for his debtor to enter into the transaction, and make it subserve the double purpose of protection to himself, and protection to his debtor against the just claims of others.

An examination of the facts and the evidence reported in this case, has failed to convince us that this transaction is in the least degree tainted with fraud. Baughman, finding himself to be insolvent, was desirous to pay to Hubbard the amount in which he was indebted to him, and to protect him, as far as possible, from loss by reason of the confiden-

tial liabilities he had incurred on his account, and that of the firm of Baughman, Hubbard & King. For this latter purpose the real estate was conveyed. This conveyance was for the consideration of $45,000; and there is nothing before us to show that this was less than the fair cash value of the property. Plaintiff was liable, as endorser and accommodation acceptor for Baughman, and the firm of Baughman, Hubbard & King, to the amount of $126,000 — a liability generally regarded in the commercial world as of a more sacred character than any other, and as demanding special protection. The property thus conveyed was not passed to an indifferent person, but to one against whom the holders of the paper might pursue their legal remedies for its collection; so that it was as accessible in his hands, for the purpose of satisfying these creditors, as it was in those of Baughman himself. The property thus transferred, if it had been seized in execution, or taken towards the payment of these liabilities, would not have satisfied a moiety of them. Under such circumstances, we can only regard the condition of the mortgage (which is esteemed by the defendants as a strong evidence of fraud) as one inserted to provide for a contingency almost impossible to arise, and which really was not in the serious contemplation of the parties. It was made in anticipation that the plaintiff would be compelled to take care of the paper upon which his name appeared, and contemplated such a result — an inevitable one, it would appear, from the situation of Baughman. The fact that it provided for the payment of the purchase-price, with interest, in cash, in five years, in case this indebtedness was paid by other parties than the plaintiff, evidences a superabundant caution in framing the contract of purchase, rather than an expectation that the alternative would ever occur which would render it operative. At any rate, viewed in the light of surrounding circumstances, it in no degree characterizes the transaction; nor does it furnish any evidence of a fraudulent design upon other creditors.

This is rendered more apparent by the fact that, within

a short period after the grant, the evidence shows that this plaintiff had actually paid over $100,000 of these liabilities, and thus satisfied, and more than doubly satisfied, the condition of the mortgage, and rendered the latter contingency provided for impossible of occurrence. Under these circumstances, we can not well see how this conveyance and mortgage can be held to create a trust in favor of Baughman, nor indeed in favor of any one. The fact appearing affirmatively that nothing would be left if the property was used to pay the debts mentioned in the mortgage, there could be no resulting trust, and the character of an assignment can not, therefore, reasonably attach to the conveyance.

Nor can we discover anything in the testimony of the witnesses evidencing fraud—that of Baughman is clearly and conclusively of the opposite tendency. The letter to Jones comes to us without any explanation of the occasion of its being written, except what may be gathered from itself. This letter, and the testimony of Whittemore, do not establish the fraudulent intent to hinder and delay, nor that the deed and mortgage were intended to operate in fact as an assignment; they only show why the plaintiff was unwilling to accept an assignment, and thereby subject himself to greater loss, on account of his obligations in behalf of Baughman and others, than would occur were the property absolutely conveyed to him. All the testimony shows a desire on the part of the plaintiff and Baughman to save the former, as far as possible, from loss; to place means in his hands which would be accessible to him, and to the creditors, for the discharge of the debts upon which he was liable—without any design respecting others, and without any expectation (and, as the proof shows, without any ground for expectation) that he would be thereby wholly saved from loss, or that anything would be left for others. Under such circumstances, it would be hard indeed to hold that the design of the parties was to anticipate that which could not occur, and, upon such a foundation, hold the transaction fraudulent.

The judgment of the Circuit Court must therefore be re-versed, and new trial ordered.

MANNING and CHRISTIANCY JJ. concurred. CAMPBELL J. did not sit in the case, having been of counsel for one of the parties.